309 S.E.2d 26

**Kathy Ann SAULS**

v.

**H.H. HOWELL, in his official Capacity of Clerk of the Circuit Court of Boone County, West Virginia.**

No. 15872.

Supreme Court of Appeals of West Virginia.

Nov. 10, 1983.

---

Margaret Gould and Timothy R. Murphy, Charleston, for appellant.

No appearance for appellee.

**McHUGH, Justice:**

This action is before this Court upon the petition of Kathy Ann Sauls for an appeal from the final order of the Circuit Court of Boone County, West Virginia. Pursuant to that order, dated April 14, 1983, the circuit court denied relief to the appellant in a mandamus proceeding instituted in that court by the appellant against the appellee, H.H. Howell, Clerk of the Circuit Court of Boone County. This Court has before it the petition for appeal, all matters of record and the brief of the appellant. No brief has been filed in this Court by the appellee.

By order entered on April 19, 1983, this Court granted the appellant's appeal to this Court. Subsequently, pursuant to *W.Va. Code*, 58–5–25 [1931], we granted the appellant's motion for leave to move to reverse.

The facts in this action are not in dispute. By order entered on September 22, 1981, the appellant, Kathy Ann Sauls, was granted a divorce from her husband, Mitchell Jay Sauls. In that order, Mitchell Jay Sauls was directed to pay the appellant $200 per month for the support of their minor child. That order further directed Mitchell Jay Sauls to pay to the appellant a certain amount "in lieu of alimony." The order stated as follows:

> It is further Adjudged, Ordered, and Decreed that Paragraph Number 7 of the written property settlement agreement of the parties hereto, dated the 20th day of July, 1981, is hereby modified as follows: the defendant shall pay unto the plaintiff the sum of One Hundred Fifty ($150.00) Dollars per month, commencing six (6) months from this day, for a period of eighteen (18) months, totalling Twenty-Seven Hundred ($2,700.00) Dollars, said periodic support payments to be paid in lieu of alimony.

\*   \*   \*   \*   \*   \*

It is further Adjudged, Ordered, and Decreed, that the written property settlement agreement of the parties hereto, dated the 20th day of July, 1981, be, and the same is hereby made the Court's ruling, with the exception of Paragraph Number 7 therein which has been modified above, and is made a part of this Order, attached hereto, and incorporated herein.

On February 23, 1983, the appellant, pursuant to *W. Va. Code,* 38–5–10 [1931], requested at the office of the appellee that a summons upon a suggestion be issued against the United States Steel Corporation. As the appellant asserts in her petition for appeal, the appellant believed that United States Steel had profit-sharing funds in its possession which it owed to Mitchell Jay Sauls. The appellant, by way of suggestion, sought those profit-sharing funds because, as the appellant asserts, Mitchell Jay Sauls had failed to make payments with respect to his obligation to pay to the appellant the $2,700 "in lieu of alimony."

The appellee, however, refused to issue the summons upon the suggestion. That refusal to issue the summons was based upon the fact that the appellant had not instituted proceedings in circuit court subsequent to the initial order of September 22, 1981, to determine the amount owed to the appellant by Mitchell Jay Sauls. In that regard, the parties stipulated in circuit court as follows:

It is the practice of the respondent clerk's office to refuse to issue a summons directed to a suggestee in situations involving judgments providing for periodic payments, such as alimony or child support, unless the present amount due has been determined in a court proceeding subsequent to the entry of the original decree; the usual procedure is to first have a rule issued upon the judgment creditor's petition directing the judgment debtor to show cause why he should not be held in contempt for his alleged failure to pay the amounts due under the divorce decree; after notice to the judgment debtor and hearing, the total amount due and owing at the time of the hearing is determined and judgment for that amount is then entered; upon entry of such a judgment, the respondent clerk's office will then issue a summons upon the suggestion of the judgment creditor.

The appellant subsequently instituted a mandamus proceeding in the circuit court to compel the appellee to issue the summons upon the suggestion. The circuit court, after conducting a hearing, denied relief to the appellant. It is from that denial of relief, reflected in the April 14, 1983, order of the circuit court, that the appellant appeals to this Court.

We begin our discussion by considering the nature of the decree entered on September 22, 1981, which directed Mitchell Jay Sauls to make the monthly payments "in lieu of alimony." That decree was clearly a judgment for money within the meaning of *W. Va. Code,* 38–3–1 [1931].[1]

This Court has held that matured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as "decretal judgments" against the party charged with the payments. *Hopkins v. Yarbrough,* 168 W.Va. 480, 284 S.E.2d 907, 910 (1981), involving child support; syl. pt. 1, *Korczyk v. Solonka,* 130 W.Va. 211, 42 S.E.2d 814 (1947), involving child support; Syl. pt. 1, *Holcomb v. Holcomb,* 122 W.Va. 293, 8 S.E.2d 889 (1940), involving alimony; *Harman v. Harman,* 120 W.Va. 199, 200, 196 S.E. 361, 362 (1938), involving alimony.

1.  *W. Va. Code,* 38–3–1 [1931], provides as follows:
    A decree for land or specific personal property and a decree or order requiring the payment of money shall have the effect of a judgment for such land, property or money, and be embraced by the word "judgment" where used in this or in articles four, five, and six of this chapter. But a decree or order in chancery, other than for the payment of money, or a decree or order for alimony or maintenance, may be enforced as it might have been if this and the following section had not been enacted.
    Furthermore, *W. Va. Code,* 38–3–2 [1931], provides, in part, that "persons entitled to the benefit of any decree or order requiring the payment of money shall be deemed judgment creditors...."

■ Under the circumstances of this case, we see no reason to distinguish court ordered monthly payments "in lieu of alimony" from court ordered monthly payments of alimony or child support, as far as the above reference to decretal judgments is concerned. The matured, unpaid installments Mitchell Jay Sauls had been directed to pay under the September 22, 1981, divorce decree stand as decretal judgments against him and in favor of the appellant. Furthermore, the appellant was not required to institute ancillary judicial proceedings to reduce the amount of those judgments to a sum certain as a condition to the institution of suggestion proceedings under *W. Va. Code*, 38-5-10 [1931].

In *Korczyk*, the plaintiff, in 1929, obtained a divorce from her husband, and the husband was ordered to pay the plaintiff $40 per month for the maintenance of their children. The husband failed to make those payments. In 1945, an execution issued upon the decretal judgment was returned "no property found," and an abstract of the judgment was recorded by the plaintiff in the office of the clerk of the county [then court] commission. In addition, the plaintiff, asserting that the husband, in fact, owned property, instituted an action in circuit court to subject that property to the satisfaction of the 1929 decretal judgment.

This Court held in *Korczyk* that the plaintiff's action against her former husband could be maintained in circuit court. In so holding, this Court rejected an assertion that, because the plaintiff had instituted no action to determine the amount of money due and payable under the decree of divorce, the circuit court was without jurisdiction to entertain the plaintiff's action to subject the husband's property to the decretal judgment. Comparing child support payments to alimony payments, this Court stated as follows:

> We know of no statute or decided case in this jurisdiction requiring an ancillary proceeding to determine the amount of alimony due from a man to his former wife. A simple mathematical calculation will generally suffice to ascertain the amount due. Such action is administra-

tive and would require no juristic determination.

130 W.Va. at 216; 42 S.E.2d at 818.

Language consistent with the above quoted language of *Korczyk* is found in *Kephart v. Kephart*, 193 F.2d 677 (D.C.Cir. 1951), cited by the appellant. In that case, a wife brought an action against her former husband to recover unpaid monthly alimony installments. The former husband had been ordered to pay those installments pursuant to a divorce decree. In *Kephart*, the District of Columbia Court of Appeals set forth the following question: "[I]s a decree directing future payment of alimony in itself a judgment for money, or must it be supplemented by a new judgment entered for installments as they mature?" The court answered that question by concluding that it was not necessary for the wife to obtain a new judgment reflecting the amount of the unpaid alimony installments. The court stated as follows:

> [W]e hold that an award of alimony is a judgment for money, on which execution may issue. It is perhaps convenient, and certainly not improper, for the court to enter a new judgment establishing of record the accrued installments which are unpaid, when the wife draws the facts to the court's attention. But that procedure is not essential. Installments which have become due are easily calculated from the terms of the original decree and a look at the calendar. The wife's application for a writ of execution accompanied by her affidavit as to nonpayment should move the issuance of the writ; if an issue is raised concerning the amount due, the court can determine it.

193 F.2d at 681.

Therefore, we hold that matured, unpaid installments provided for in a decree of divorce, which decree ordered a husband to pay to his former wife $2,700 "in lieu of alimony" at $150 per month, stand as decretal judgments against the husband, and the wife is entitled to institute suggestion proceedings under *W. Va. Code*, 38-5-10 [1931], to recover upon those judgments, and she need not institute ancillary pro-

ceedings to reduce the amount of those judgments to a sum certain.[2]

*W. Va. Code*, 38–5–10 [1931], upon which the appellant relies in this action,[3] provides as follows:

Upon a suggestion by the judgment creditor that some person is indebted or liable to the judgment debtor or has in his possession or under his control personal property belonging to the judgment debtor, which debt or liability could be enforced, when due, or which property could be recovered, when it became returnable, by the judgment debtor in a law court, and which debt or liability or property is subject to the judgment creditor's writ of fieri facias, a summons against such person may be sued out of the office of the clerk of the circuit court of the county in which such person so indebted or liable, or so having such personal property, resides, or, if he be a nonresident of the State, in the county in which he may be found, upon an attested copy of such writ of fieri facias being filed with such clerk to be preserved by him in his office, requiring such person to answer such suggestion in writing and under oath. The return day of such summons shall be the next term of such court.

Other provisions may be found in chapter 38, article 5, of the West Virginia Code concerning suggestion proceedings, and

**2.** The appellant does not raise in this action an issue concerning executions, *W. Va. Code*, 38–4–1, *et seq.*, and the relationship of executions to suggestions obtained under the provisions of *W. Va. Code*, 38–5–10 [1931]. It should be noted, however, that the written form entitled "Suggestion" contained in the record before this Court, and upon which the appellant seeks to proceed, states that on September 22, 1981, the appellant recovered a judgment against Mitchell Jay Sauls "upon which judgment a writ of FIERI FACIAS has issued, and is now in the hands of the Sheriff of Boone County, unpaid and unsatisfied...." Black's Law Dictionary 565 (5th ed. 1979), states, in part, as follows: "Fieri facias. * * * A writ of execution commanding the sheriff to levy and make the amount of a judgment from the goods and chattels of the judgment debtor." Furthermore, *W. Va. Code*, 38–4–5 [1931], provides that "[o]n a judgment for money, there may be issued an execution known as a writ of fieri facias." *See also W. Va. R. Civ. P.* 69; *W. Va. Code*, 38–4–6 [1931].

**3.** *W. Va. Code*, 38–5–10 [1931], is found in ch. 38, art. 5, of the West Virginia Code, which article concerns proceedings in aid of execution. Separate proceedings are set forth in that article which involve persons who may be indebted in certain ways to a judgment or execution debtor. Those proceedings include (1) interrogatory proceedings, *W. Va. Code*, 38–5–1 [1931], (2) suggestions, *W. Va. Code*, 38–5–10 [1931], and (3) suits instituted by judgment creditors, *W. Va. Code*, 38–5–20 [1931].

Pursuant to *W. Va. Code*, 38–5–1 [1931], an execution creditor may require an execution debtor or a "debtor or bailee of such execution debtor" to answer interrogatories concerning the execution debtor's property. Other sections in article 5 concern such interrogatories, some of which sections deal with the disposition of the execution debtor's property ascertained by way of the interrogatories.

With respect to suggestion proceedings, as the provisions of *W. Va. Code*, 38–5–10 [1931], indicate, the person suggested is required to answer the suggestion, concerning the judgment debtor's property, "in writing and under oath." Other sections in article 5 deal with suggestions, including *W. Va. Code*, 38–5–14 [1931], which provide, in part, as follows:

A person suggested may ... deliver the property or pay the money for which he is liable, or a sufficiency thereof to satisfy the execution, and shall thereby be discharged from any further liability under the execution, and, as to the property so delivered and/or money so paid, he shall be discharged from all liability whatsoever to the judgment debtor....

Pursuant to *W. Va. Code*, 38–5–15 [1931], the person suggested may be ordered by a court to "pay the amount so due from him, and to deliver such property, or any part of such money or property, to such person as the court may designate as receiver...." The person suggested may be compelled, under *W. Va. Code*, 38–5–17 [1931], to answer the suggestion, and, pursuant to *W. Va. Code*, 38–5–18 [1931], a trial to a court or jury is authorized when compliance by the person suggested to suggestion proceedings is disputed. *W. Va. Code*, 38–5–19 [1931], states that an officer receiving money in a suggestion proceeding shall ultimately pay the proceeds "to the parties entitled thereto."

None of the sections in ch. 38, art. 5, of the West Virginia Code expressly provide for notice to the judgment debtor of suggestion proceedings.

*W. Va. Code*, 38–5–20 [1931], provides that, separate from interrogatory and suggestion proceedings, a judgment creditor may under certain circumstances attempt to satisfy the judgment by instituting a suit against a person who may be liable to the judgment debtor.

none of the provisions in that article expressly require that a judgment debtor be notified of suggestion proceedings. *See* n. 3 *supra.* We further note that even if a judgment debtor is aware that an execution has been issued under *W. Va. Code,* 38–4–1, *et seq.,* with respect to the judgment debtor's property, the judgment debtor may, despite that fact, be unaware that a judgment creditor has sought a suggestion under *W. Va. Code,* 38–5–10 [1931].

■ We hold, however, that a judgment debtor is entitled to notice that suggestion proceedings under chapter 38, article 5, of the West Virginia Code have been instituted by a judgment creditor, and the judgment debtor shall be entitled pursuant to that notice to a copy of the summons issued under the provisions of *W. Va. Code,* 38–5–10 [1931], upon the suggestion.

In *Bergdorf Goodman, Inc. v. Marine Midland Bank,* 97 Misc.2d 311, 411 N.Y. S.2d 490 (1978), a judgment creditor instituted a proceeding by petition to obtain from a bank funds in the checking and savings account of the judgment debtor. Before the court in *Bergdorf* were statutes requiring that the judgment debtor be served with notice of the proceedings "in the same manner as a summons or by registered or certified mail, return receipt requested." In that action, the Civil Court of the City of New York held, *inter alia,* that the petition of the judgment creditor with respect to the bank should be dismissed because the judgment creditor attempted to notify the judgment debtor by way of regular mail, rather than by summons or registered or certified mail as required by the statutes.

Suggestion proceedings in this State, found in chapter 38, article 5, of the West Virginia Code, do not include a statute expressly requiring notice to the judgment debtor of such proceedings. The *Bergdorf* case is different from the case before this Court in that respect. However, the court in *Bergdorf* stated as follows:

A legal proceeding to divest rights cannot be instituted without safeguarding the right of due process of law. Due process requires proper notice of the proceedings.... [The statutes in question] were adopted to meet those due process requirements by providing a manner of service reasonably calculated to give the judgment debtor notice of the proceeding and an opportunity to intervene....

411 N.Y.S.2d at 491.[4]

Two often cited cases concerning the rights of creditors and debtors are *Sniadach v. Family Finance Corporation of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In *Sniadach,* the United States Supreme Court held that Wisconsin's statutory prejudgment garnishment procedure, which failed to provide timely notice and hearing to the wage earner concerning the seizure of wages, violated the principles of due process. In *Fuentes,* Florida and Pennsylvania prejudgment replevin statutes permitted the seizure of personal property from the possessor of the property upon the application of a creditor. The

---

**4.** *W. Va. Code,* ch. 38, art. 5A, not cited by the appellant, is entitled "Suggestions of Salary and Wages of Persons Engaged in Private Employment." *W. Va. Code,* 38–5A–1 [1939], in that article, provides, in part, as follows:

For purposes of this article:
 (1) 'Salary' and 'wages' shall be given their ordinary meaning but in any event shall include compensation measured partly or wholly by commissions, percentages or *share of profits* or by other sums based upon work done or results produced whether or not the judgment debtor is given a drawing account.
 ....
 (3) The term 'judgment creditor' shall include the owner of a money decree. (emphasis added)

In that article, "suggestee execution" proceedings are set forth. *W. Va. Code,* 38–5A–3 [1979], provides, in part, as follows:

A judgment creditor may apply to the court in which the judgment was recovered or a court having jurisdiction of the same, without notice to the judgment debtor, for a suggestee execution against any money due or to become due within one year after the issuance of such execution to the judgment debtor as salary or wages arising out of any private employment.

Moreover, *W. Va. Code,* 38–5A–4 [1959], provides that "[a] certified copy of an execution issued under this article against salary or wages shall be served upon the judgment debtor."

**534**

United States Supreme Court held, in *Fuentes,* that those statutes worked a deprivation of property without due process of law, insofar as those statutes denied notice and hearing to the possessor of the property prior to seizure. *Sniadach* and *Fuentes* were cited by this Court in *State ex rel. Payne v. Walden,* 156 W.Va. 60, 190 S.E.2d 770 (1972). In *Payne,* we held that this State's statutory "distress for rent" procedure, which permitted the personal property of a tenant to be levied upon and seized for rent without prior notice and hearing to the tenant, deprived the tenant of the right to due process under the United States and West Virginia constitutions.

Although the *Sniadach, Fuentes* and *Payne* cases may be distinguished from the action before this Court, in that those cases concerned prejudgment proceedings rather than postjudgment proceedings, we find the reasoning of those cases persuasive upon the question of whether a judgment debtor ought to receive notice that a judgment creditor has instituted suggestion proceedings pursuant to *W.Va.Code,* 38–5–10 [1931]. Those cases have in common the principle that fairness is a proper subject of inquiry in evaluating statutory proceedings involving the rights of creditors and debtors.

Unlike other situations involving unpaid debts, the amount payable with respect to decretal awards, such as the one before this Court in this action, may fluctuate over a period of time. The total amount payable will purportedly increase each month if no payments are made. Notice to the judgment debtor of suggestion proceedings under *W.Va.Code,* 38–5–10 [1931], aids the judgment debtor in seeking appropriate legal remedies to challenge the suggestion.

Upon all of the above, the final order of the Circuit Court of Boone County is reversed, and this action is remanded to that court for proceedings consistent with this opinion.

Reversed.