655 S.E.2d 539

**STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, CHILD SUPPORT ENFORCEMENT DIVISION, and Angela L. Varney, Petitioners Below, Appellants**

v.

**Cecil C. VARNEY, Respondent Below, Appellee.**

No. 33332.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 24, 2007.

Decided Nov. 21, 2007.

Angela L. Varney, Delbarton, WV, pro se.

Cecil C. Varney, Williamson, WV, pro se.

PER CURIAM.

This is an appeal by Appellant Angela L. Varney[1] from an order of the Circuit Court of Mingo County, West Virginia, which denied her appeal and affirmed the final order of the Family Court of Mingo County. At issue is the enforceability of a decretal judgment for alimony arrearages against Appellant's former spouse, Appellee Cecil C. Varney. The court below determined that the statute of limitations applies to bar Appellant's claim. Upon careful review of the briefs, record, arguments of counsel, and applicable precedent, this Court reverses the order of the circuit court.

I.  Factual and Procedural Background

During the pendency of the parties' divorce proceedings—which began over seventeen years ago—numerous motions and briefs were filed with respect to custody of the parties' only child, the payment of certain marital debts and the disposition of certain marital assets. As a result of this protracted ordeal, a plethora of orders were entered addressing these issues, which either have been resolved or are not relevant to the instant appeal. Therefore, we recite only those facts and refer only to those filings and court orders which are pertinent to resolution of this appeal.

The sole question in this appeal involves a judgment for alimony arrearages entered against Appellee and in favor of Appellant. On June 5, 1991, the circuit court entered an Order Pendente Lite, which, *inter alia,* provided that "[b]y agreement of the parties, the defendant [Appellee herein] shall pay $1,000 per month as alimony to the plaintiff [Appellant herein] during the pendency of this action."

The parties were subsequently divorced by Divorce Decree entered in the Circuit Court of Mingo County on January 27, 1992. Also on that date, the circuit court entered a Final Order with Findings of Facts, Conclusions of Law and Recommendations to the Court,[2] in which the various issues relating to the parties' divorce were addressed.[3]

Relevant to the instant appeal, the court made reference to Appellee's failure to comply with the June 5, 1991, Order Pendent Lite[4] and stated, in paragraph 35, that

> Since the time a temporary hearing was held in this matter by the former Special Family Law Master[,] the Defendant [Appellee herein] has failed to comply with his agreement made. Whether, due to the

---

1.  The West Virginia Department of Health and Human Resources, Child Support Enforcement Division (now Bureau for Child Support Enforcement, or "BCSE"), did not participate in this appeal.

2.  Both the Divorce Decree and the Final Order with Findings of Facts, Conclusions of Law and Recommendations to the Court were signed by the circuit court judge on January 27, 1992. They were entered by the clerk of the circuit court, in Book No. 81, at pages 279 and 280, respectively, on January 28, 1992. In later orders, which are discussed below, the Divorce Decree and Final Order with Findings of Fact, Conclusions of Law and Recommendations to the Court are referred to as having been entered on January 27, 1992, rather than January 28, 1992. To avoid confusion, we shall refer to January 27, 1992 as the date of the orders' entry. However, this discrepancy is discussed in more detail in the Discussion section of this opinion.

3.  According to the Final Order with Findings of Facts, Conclusions of Law and Recommendations to the Court, prepared by the Special Family Law Master, the matter came to be heard on various dates over the course of several months. The Divorce Decree indicates that the Special Family Law Master's findings, conclusions and recommendations were submitted to the circuit court on or about October 1, 1991.

4.  Appellant received no award of alimony under the final terms of the divorce.

delay of the entry of the Order, the matter can be said not to constitute a decretal judgment, it nevertheless constituted a contractual commitment of the Defendant to make such payments. Accordingly the Plaintiff [Appellant herein] should be granted a judgment against the Defendant for all arrearages of support and Five Thousand Two Hundred Dollars ($5,200.00) for payments made by the Plaintiff on the debts.

Absent from the January 27, 1992, order was any calculation of the amount of support in arrears, including any reference to a specific time period during which the Appellee failed to make the subject support payments.

A contempt proceeding was conducted on January 27, 1992,[5] before the Honorable David W. Knight, Special Judge. Judge Knight subsequently entered an Order Pursuant to Rule and Modifying Divorce Decree on March 19, 1992. This order was entered by the clerk of the circuit court in Civil Order Book No. 82, at page 546, on March 23, 1992. The Order Pursuant to Rule and Modifying Divorce Decree concluded, *inter alia:*

> During the course of the hearings, various testimony on documentary evidence was introduced which leads the Court to believe that there should be a modification of the Divorce Decree for the purposes of clarification.
>
> It is, therefore, ORDERED that the Divorce Decree entered on the 27th day of January, 1992, be, and hereby is, modified as follows:
>
> 1. Paragraph 35 of the Family Law Master's Recommended Decision which was incorporated into the Divorce Decree shall henceforth read as follows:

> Since the time a temporary hearing was held in this matter by the former Special Family Law Master, the Defendant has failed to comply with his agreement made. Whether, due to the delay of the entry of the Order, the matter can be said not to constitute a decretal judgment, it nevertheless constituted a contractual commitment of the Defendant to make such payments. Accordingly, the Plaintiff shall be granted a judgment against the Defendant for all arrearages of alimony totalling Eleven Thousand Dollars ($11,000.00), plus interest calculated at ten percent (10%) from the month of October, 1991, per annum, and Five Thousand Two Hundred Dollars ($5,200.00) for payments made by Plaintiff on the debts, plus interest, from the month of October, 1991, at a rate of 10%, per annum.

> . . . .

> 3. All the rest and residue of the Divorce Decree ... shall remain unchanged and in full force and effect.

During the course of the January 27, 1992 contempt proceeding, the judge explained his reason for modifying paragraph 35 of the previously-entered divorce decree[6] as follows:

> I find that the arrearage should have been stopped and the alimony should have been stopped at the time the law master made his finding, which was the first of October, 1991[7] and that there was a period of 11 months, according to my calculation between the last hearing and what would have been the end of September. So, I find that the arrearage from that period of time or [sic] $11,000.00, in addition to that the law master made a finding of $5,200.00

5. Appellant instituted contempt proceedings on September 5, 1991, alleging Appellee failed to pay certain marital debts and unilaterally disposed of certain marital assets, in violation of the June 5, 1991 order. The court issued a rule to show cause that same day. A hearing on the matter was conducted on January 27, 1992; however, according to various correspondence in the record, the transcript of the hearing was, for the most part, lost. Approximately one and one-quarter pages of the hearing transcript were salvaged and appear in the record; the hearing is discussed in more detail below.

6. The court also modified paragraph 34 of its prior order; that modification is not relevant to the instant appeal.

7. As indicated previously, Findings of Fact, Conclusions of Law and Recommendations of the Special Family Law Master were submitted to the circuit court on or about October 1, 1991.

in paragraph 35. I find that the $400.00 a month figure set by the law master, set by the agreement for additional support in the temporary petition order on paragraph 35 and will grant a judgment against the defendant for $11,000.00 and the $5,200.00.

. . . .

The judgment should include the $11,000.00 and the $5,200.00 and the prejudgment interest from the last of September and the first of October, 1991 and I am not going to compound the interest.

(Footnote added).

The court also found that Appellee's failure to make support payments under the June 5, 1991, order did not amount to either civil or criminal contempt. According to the transcript, the court explained that its ruling that the interest should not be compounded was based, in part, on its finding of no contempt. Additionally, the March 23, 1992, order denied the BCSE's motion to establish a program of automatic withdrawal from Appellee's business account for amounts owed under the June 5, 1991, order.

Thereafter, Appellant, along with the BCSE, attempted to collect the foregoing judgment. As reflected in a December 19, 1996, circuit court order, a Writ of Suggestion was issued and served on an officer of the Bank of Mingo in an effort to secure funds on deposit there in the name of Appellee and his mother, Mary Varney. The December 19, 1996, order refers to the family court's March 23, 1992, order awarding Appellant "alimony which was unpaid resulting in arrearage against the defendant of $17,214.16 as of August 31, 1996, including interest[.]" Notably, on January 10, 1997, Appellee filed a Motion for Stay of Order and

an accompanying affidavit, in which he neither objects to or otherwise questions the court's reference to the March 23, 1992 order as awarding the judgment against Appellee. Ultimately, an Order Quashing Suggestion Execution and Lifting Stay was entered on November 3, 1997, on the ground, *inter alia*, that notwithstanding the apparent joint ownership of the funds, the funds are the sole property of Appellee's mother and not subject to execution by Appellee's creditors.

Meanwhile, the West Virginia Department of Health and Human Resources, Child Support Enforcement Division, filed a Petition for Contempt. On September 22, 1997, the circuit court granted the petition and entered an Order to Show Cause requiring Appellee to show cause as to why he should not be adjudged in contempt for refusing to obey the March 23, 1992,[8] order requiring him to pay a judgment for alimony. On January 15, 1998, Appellee filed a Motion to Dissolve Order to Show Cause. Approximately five years later, by order entered August 26, 2002, the court found Appellee not to be in contempt and, accordingly, entered a Final Order Dissolving Rule for Contempt.

Other efforts by Appellant to collect the decretal judgment include the filing of a Notice to Employer/Source of Income to Modify Withholding on August 12, 1996 and the obtaining of abstracts of judgment on September 5, 1996, February 28, 2002 and March 21, 2002.[9] Appellant also obtained a Suggestion of Personal Property and a Suggested Execution on March 20, 2002.

On March 20, 2002, Appellant obtained a writ of execution for the judgment against Appellee,[10] with a return day of May 5, 2002.[11] Though the record is not clear on

---

8. The Order to Show Cause entered on September 22, 1992, identified the date of the order as March 19, 1992. As noted above, the circuit court judge signed the order on March 19, 1992, but the order was not entered by the clerk of the circuit court until March 23, 1992. This issue is discussed in more detail in the Discussion section of this opinion.

9. It appears from the record that the abstracts of judgment obtained by Appellant were not docketed in the office of the clerk of the county commission. *See* W.Va.Code § 38–3–5.

10. The writ of execution issued on March 20, 2002, was in the amount of $33,050.00. Of this amount, $16,200.00 was for the unpaid principal and $16,740.00 for unpaid interest. The remaining amount was for unpaid costs and the cost of the writ.

11. In an affidavit dated April 22, 2002, Margaret Kohari, a deputy clerk in the office of the Clerk of the County Commission of Mingo County, stated that the writ of execution was filed with her office on March 21, 2002, and recorded in Execution Docket Book at page 132. *See* W. Va.Code § 38–3–8.

this point, it appears that either there was no return by an officer or the writ was returned unsatisfied. *See* W.Va.Code § 38-3-18. Upon learning that a writ of execution had been issued, Appellee wrote a letter, dated April 2, 2002, to the Clerk of the Circuit Court of Mingo County. In the letter and accompanying affidavit, Appellee avers that the March 23, 1992, order does not create a judgment but rather, modifies the divorce decree entered on January 27, 1992. Appellee requested that the writ of execution and abstract of judgment "that wrongfully and mistakenly state the date of judgment as March 23, 1992, or any date other than January 27, 1992" be rescinded. The record does not indicate whether the clerk of the circuit court took any action with respect to Appellee's letter and affidavit.

On May 19, 2003, the BCSE filed a Motion for Determination of Judgement and requested that the court enter an order "setting a judgement amount and ruling that the judgements previously entered by the court have been properly renewed by the [Appellant] in a timely manner and are, therefore, valid and enforceable judgements." In support of its motion, the BCSE stated, *inter alia*, that a writ of execution was issued on March 20, 2002 in an "attempt to collect the judgement and pursuant to [W.Va.Code § 38-3-18] acted to toll the running of the statute of limitations and preserve the judgement. . . . Nine years and [t]hree [h]undred [s]ixty [t]wo days from the original entry of the judgement against the [Appellee] and in favor of the [Appellant]."

Following a hearing on the matter, the family court entered a Final Order on December 21, 2004, and ruled, *inter alia*, that paragraph 35 of the January 27, 1992 order granting the parties' divorce granted a judgment in favor of Appellant and against Appellee " 'for all arrearages of support and . . . $5200.00 for payments made by the [Appellant] on the debts.' " The court further concluded, in pertinent part,

That the gross total of said judgment, although an ascertainable sum certain, was not set out in said Order; and

That by Order entered herein on March 23, 1992, the Court modified the language of said judgment by further calculating the arrearage of support, adding prejudgment interest, to begin from October, 1991, and thereby establishing the amount of the decretal judgment to be $16,200.00 plus applicable interest; and

That subsequently thereto, over the course of the years, the plaintiff caused the Clerk of this Court to issue various Abstracts of Judgment, Suggestions and Notices to Employers of Income Withholding, all in an effort to collect said judgment; and

That the Court notes that the Clerk of this Court erroneously identified the date of the judgment as March 23, 1992 (which is the date of the modified judgment), instead of the correct date of January 27, 1992; and

That West Virginia Code Chapter 38-3-18 provides that "a judgment execution may be issued within ten years after the date thereof;"

That in the case of *Shaffer v. Stanley*, [215 W.Va. 58] 593 S.E.2d 629 (W.Va.2003), filed on November 26, 2003, the West Virginia Supreme Court of Appeals ruled that administrative attempts to enforce an obligation, otherwise collectable by the Bureau for Child Support Enforcement, do not toll the statute of limitations; and

That during the ten-year period from January 27, 1992, through and including January 27, 2002, no actions were taken by the plaintiff to preserve the decretal judgment other than administrative actions which do not satisfy the requirements set forth in *Shaffer v. Stanley*.

The family court ruled, therefore, that the date of the decretal judgment is January 27, 1992, and that, because Appellant did not obtain a writ of execution before January 27, 2002, the enforceability of the judgment was extinguished as of that date. Thus, the court determined that "efforts to collect this decretal judgment are now subject to bar by the affirmative defense of statute of limitations."

■ Appellant appealed the family court's order to the Circuit Court of Mingo County. In a Final Order Denying Appeal and Affirming Final Order of the Family

Court, entered September 8, 2005, the circuit court agreed with the family court's finding that the date of the decretal judgment is January 27, 1992. The court concluded that although the March 20, 1992, order "alter[ed] the language" of the January 27, 1992, order, it "does not establish a new decretal amount." Accordingly, the circuit court ruled that because Appellant did not obtain a formal writ of execution between January 27, 1992, and January 27, 2002, the limitation period was not tolled. The circuit court affirmed the family court's ruling that the statute of limitations applies to bar Appellant from recovering upon the decretal judgment against Appellee. It is from this order that Appellant now appeals.[12]

## II. Standard of Review

██ Our consideration of the circuit court's order presently challenged by Appellant is governed by the following standard of review: "In reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the applica-

tion of law to the facts under an abuse of discretion standard. We review questions of law *de novo*" Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

## III. Discussion

### A.

██ At the outset, and as noted above, the Divorce Decree and Final Order with Findings of Facts, Conclusions of Law and Recommendations to the Court were signed by the circuit court judge on January 27, 1992, but were entered in the civil docket book by the clerk of the circuit court on January 28, 1992. Similarly, the Order Pursuant to Rule and Modifying Divorce Decree was signed by the circuit court judge on March 19, 1992, but was not entered in the civil docket book by the clerk of the circuit court until March 23, 1992. It is well settled that

> [i]n a proceeding governed by the Rules of Civil Procedure, a judgment rendered in such proceeding is not final and effective until entered by the clerk in the civil docket as provided in Rule 58[13] and Rule 79(a)[14] of the Rules of Civil Procedure.

---

12. On January 29, 1992, Appellee filed for discharge in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. The bankruptcy court entered a Discharge Order on May 15, 1992, thereby dismissing the bankruptcy action. On appeal to the circuit court, Appellant argued, for the first time, that the limitation period was automatically tolled as a result of the bankruptcy filing, *see* W.Va.Code § 55–2–22 ("[e]ffect of bankruptcy"), and that she had until ten years after the May 15, 1992, discharge order was entered to execute on the judgment in order to preserve it. This assignment of error was not raised before the family court and thus, the circuit court declined to address it for the first time on appeal. Similarly, though Appellant raises this assignment of error in the instant appeal, it is well settled that " ' "[i]n the exercise of its appellate jurisdiction, this Court will not decide non-jurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syllabus Point 1, *Mowery v. Hitt*, 155 W.Va. 103 [, 181 S.E.2d 334] (1971).' Syl. pt. 1, *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327(1978)." Syl. pt. 3, *Voelker v. Frederick Business Properties Co.*, 195 W.Va. 246, 465 S.E.2d 246 (1995).

13. Rule 58 of the West Virginia Rules of Civil Procedure, Entry of Judgment, provides:

> Subject to the provisions of Rule 54(b), the court shall promptly settle or approve the form of the judgment and sign it as authority for entry by the clerk. The clerk, forthwith upon receipt of the signed judgment, shall enter it in the civil docket as provided by Rule 79(a). The notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry. The entry of judgment shall not be delayed for the taxing of costs or to permit a motion for a new trial or any other motion permitted by these rules.

14. Rule 79(a) of the West Virginia Rules of Civil Procedure, Books and Records Kept by the Clerk and Entries therein, provides:

> (a) Civil Docket.—The clerk shall keep a book known as "civil docket" of such form and style as may be prescribed by the Supreme Court of Appeals, and shall enter therein each civil action to which these rules are made applicable. Actions shall be assigned consecutive file numbers. The file number of each action shall be noted on the folio of the docket whereon the first entry of the action is made. All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on

(Footnotes added). Syl. pt. 4, *State v. Mason*, 157 W.Va. 923, 205 S.E.2d 819 (1974). *See Id.*, at syl. pt. 5 ("Rendition of a judgment is the pronouncement of the judgment by the court, while entry of the judgment is the notation of the judgment in the official records.").[15] Accordingly, for purposes of determining when the limitation period began to run in this case, the proper date is the date of entry of the judgment by the circuit clerk in the civil docket.[16]

### B.

■ At issue in this appeal is whether the statute of limitations applies to bar recovery of the judgment for alimony arrearages awarded in favor of Appellant and against Appellee. It is undisputed that the limitation period in W.Va.Code § 38–3–18 applies to the collection of a judgment for alimony arrearages. " 'The ten-year statute of limitations in *W.Va.Code*, 38–3–18 [1923] and not the doctrine of laches applies when enforcing a decretal judgment which orders the payment of monthly sums for alimony or child support.' Syllabus point 6, *Robinson v. McKinney*, 189 W.Va. 459, 432 S.E.2d 543 (1993)." Syl. Pt. 6, *Collins v. Collins*, 209 W.Va. 115, 543 S.E.2d 672 (2000).

West Virginia Code § 38–3–18 provides:

On a judgment, execution may be issued within ten years after the date thereof.

2. An oral order has the same force, effect, and validity in the law as a written order. In other words, the actual physical possession of a written order is not required to effectuate said order.

Our holding in *Moats* is not applicable to the case presently before us. At issue in *Moats* was whether a county commission was immune from suit and liability for damages to plaintiff under the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–1 to –18, "by reason of enforcing and executing the order of the mental hygiene commissioner." 206 W.Va. at 12, 521 S.E.2d at 184.

In *Moats*, the plaintiff's decedent intentionally injured herself (and eventually die d from her injuries) while in the custody of the sheriffs department awaiting transport to a hospital for examination, following an involuntary commitment hearing. Under the Act, if the sheriffs department was acting pursuant to an order entered by the mental hygiene commissioner, it would be immune from suit. The plaintiff argued, however, that the sheriff's department voluntarily assumed responsibility for the decedent and was not executing or enforcing the commissioner's order because it did not have a written copy of it in its possession at the time the decedent injured herself. Thus, plaintiff argued, the sheriff's department could not enforce or execute an order until it receives it. Based upon syllabus points one and two, above, we rejected plaintiff's argument and concluded that "[b]ecause the Sheriff's Department had notice of the order entered by the mental hygiene commissioner in this case, we find that the Sheriff was acting pursuant to said order." 206 W.Va. at 13, 521 S.E.2d at 185.

The facts of *Moats* involved the duty of law enforcement officers to execute and enforce a lawful order of a court even though the officers did not have actual physical possession of said order. Our decision in *Moats* did not involve entry of a judgment order as it relates to the running of statutes of limitations and thus, does not affect our holding in the instant case.

---

the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made. When in an action trial by jury has been properly demanded or ordered the clerk shall note the word "jury" on the folio assigned to that action.

15. The facts in *Mason* involved the sale at public auction of unredeemed property that had previously been "sold to the State" for unpaid taxes. Following the sale, the Deputy Commissioner of Forfeited and Delinquent Lands reported the sale to the court on February 9, 1972, and the court signed a "Decree of Confirmation" on that date. Also on that date, the "decree" was entered in the "Civil Action Book" and the "Delinquent Land Order Book." On February 25, 1972, the heirs of the property's former owner sought to redeem the property, arguing that the "Decree of Confirmation" signed by the court on February 9, 1972, "was not a final order because it had not been entered in the civil docket as required by Rule 58 of the Rules of Civil Procedure, and that they had the right to petition for redemption any time before the order of confirmation was final." 157 W.Va. at 925, 205 S.E.2d at 821. This Court determined that the confirmation of sale was not final when it was signed by the court on February 9 and entered in the order book. Rather, the Court relied on the language of Rules 58 and 79(a) of the W.Va. R. Civ. P. and found the confirmation of sale (deemed a "judgment" pursuant W.Va. R. Civ. P. 54(a)) was not final until after March 13, 1972, when it was entered in the civil docket.

16. In *Moats v. Preston County Comm.*, 206 W.Va. 8, 521 S.E.2d 180 (1999), we held in syllabus points one and two, the following:

1. Generally, an order is effective when a court announces it.

Where execution issues within ten years as aforesaid, other executions may be issued on such judgment within ten years from the return day of the last execution issued thereon, on which there is no return by an officer or which has been returned unsatisfied. An action, suit or scire facias may be brought upon a judgment where there has been a change of parties by death or otherwise at any time within ten years next after the date of the judgment; or within ten years from the return day of the last execution issued thereon on which there is no return by an officer or which has been returned unsatisfied. But if such action, suit or scire facias be against the personal representative of a decedent, it shall be brought within five years from the qualification of such representative.

■ We interpreted this statutory provision to mean that "[b]y the specific terms of W.Va.Code § 38–3–18 (1923) (Repl.Vol.1997), the issuance of an execution operates to preserve the judgment, and the statute of limitations commences to run from the return date of the execution." *Collins,* 209 W.Va. 115, 543 S.E.2d 672, at syl. pt. 7. As we recognized in *Zanke v. Zanke,* 185 W.Va. 1, 4, 404 S.E.2d 92, 95 (1991), *appeal after remand,* 192 W.Va. 310, 452 S.E.2d 401 (1994),

[u]nder W.Va.Code, 38–3–18, a judgment may remain alive after the ten-year period if the judgment creditor seeks issuance of an execution within the ten-year period. Should this judgment remain unsatisfied, the creditor can obtain additional executions in a like manner to keep the judgment alive. Conversely, however, if the ten-year period is allowed to run without an execution being issued in favor of the payee spouse, the judgment dies a statutory death, incapable of revival.

(Footnote and citations omitted.)

■ Furthermore, in *Shaffer v. Stanley,* 215 W.Va. 58, 593 S.E.2d 629 (2003), we made clear that administrative actions to obtain past due child support payments "do[ ] not constitute an execution of judgment under W.Va.Code § 38–3–18 (1923) for the purpose of tolling the ten-year limitation period for the execution of an issuance on a judgment." Syl. pt. 5, in relevant part.[17] Though the facts in *Shaffer* involved a judgment for child support arrearages, the requirement that a formal writ of execution be issued in order to toll the ten-year limitation period applies to a judgment for alimony arrearages.

In the instant case, Appellant made various attempts to collect the decretal judgment. It is clear from the record, however, that the only writ of execution issued was on March 20, 2002, less than ten years from the date of entry of the March 23, 1992, order, but more than ten years after the January 27, 1992, order was entered. The lower court determined that the date of the decretal judgment is January 27, 1992, the date of the Divorce Decree and Final Order with Findings of Fact, Conclusions of Law and Recommendations to the Court. Because a formal writ of execution was not issued within ten years of that date—that is, before January 27, 2002—the circuit court ruled the statute of limitations applies to bar enforceability of the judgment. We disagree.

■ A careful review of the March 23, 1992, Order Pursuant to Rule and Modifying Divorce Decree reveals that the court made a material modification to the January 27, 1992, order such that it was tantamount to a new judgment. In the March 23, 1992, order, the lower court found that Appellee was not in contempt for failing to make the alimony payments to Appellant and, further, denied the BCSE's motion to have the unpaid alimony automatically withdrawn from Appellee's business account. Moreover, the

---

**17.** At issue in *Shaffer* was whether attempts by the Bureau of Child Support Enforcement to intercept the former husband's income tax returns for the purpose of satisfying past due child support payments, as provided by W.Va.Code §§ 48–18–117 and 48–18–118, tolled the ten-year limitation period set forth in W.Va.Code § 38–3–18. This Court determined that the income tax intercepts were not "executions" under W.Va. Code § 38–3–18. We concluded that "an execution necessarily involves a court process wherein a judicial writ is issued." *Shaffer,* 215 W.Va. at 65, 593 S.E.2d at 636. On the other hand, "a tax offset is a purely administrative action initiated and carried out by executive agencies." *Id.* Thus, actions other than executions do not toll the limitation period in W.Va.Code § 38–3–18.

March 23, 1992, order stated that the court heard "various testimony on documentary evidence" leading it to modify the Divorce Decree. The order granted a judgment in favor of Appellant for all alimony arrearages totaling $11,000.00, plus interest, from October of 1991, as well as $5,200.00 for payments Appellant made on debts, plus interest, also from October of 1991. As the hearing transcript made clear, the March 23, 1992, order was based on a particular finding that the alimony should have ceased in October 1991. The court found the total arrearage to be $11,000.00 because, as explained during the January 27, 1992, contempt proceeding, "there was a period of 11 months, according to [the court's] calculation between the last hearing and what would have been the end of September." Furthermore, the lower court determined that the interest should not be compounded based, in part, upon the finding that Appellee's failure to make the subject payments did not constitute contempt.

Clearly, in its March 23, 1992, order, the lower court awarded Appellant a precisely-calculated judgment based upon evidence it considered and findings it made *after* the January 27, 1992 order was entered.'[18] We conclude, therefore, that it is from the date of the March 23, 1992, judgment that the limitation period set forth in W.Va.Code § 38–3–18 began to run. Because a writ of execution was issued on March 20, 2002, within the ten-year statute of limitations that had attached to the March 23, 1992, judgment, the decretal judgment against Appellee was preserved and the statute of limitations began to run anew from the return day of the execution. *See Collins,* 209 W.Va. 115, 543 S.E.2d 672, at syl. pt. 7. As previously indicated, the return day of the execution is May 5, 2002. Though it is not clear from the record, it appears that either there was no return by

an officer or the execution was returned unsatisfied. *See* W.Va.Code § 38–3–18. In either event, we find that, pursuant to W.Va. Code § 38–3–18, Appellant may continue her efforts to collect the decretal judgment from Appellee either by obtaining another writ of execution or by instituting a civil action, until May 5, 2012.

### IV. Conclusion

Based upon the foregoing, the circuit court's order of September 8, 2005, is hereby reversed.

Reversed.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judge DAVID R. JANES, sitting by temporary assignment.

---

18. In syllabus point one of *Sauls v. Howell,* 172 W.Va. 528, 309 S.E.2d 26 (1983), we held:

Mature, unpaid installments provided for in a decree of divorce, which decree ordered a husband to pay to his former wife $2,700, "in lieu of alimony" at $150 per month, stand as decretal judgments against the husband, and the wife is entitled to institute suggestion proceedings under *W. Va.Code,* 38–5–10 [1931], to recover upon those judgments, and she need not institute ancillary proceedings to reduce

the amount of those judgments to a sum certain.

In *Sauls,* the payee wife sought to recover the decretal judgments by instituting suggestion proceedings against a corporation believed to possess profit-sharing funds owed to her former husband. Unlike the instant case, the wife did not have the benefit of a judgment which set forth precisely the amount of unpaid alimony. Nothing in *Sauls* prohibits a judgment creditor from executing on such a judgment.